# IN THE DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| ROBERT RICHARDS | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIGHTON TOWNSHIP, HOWARD | : | |
| BINNS, JOSHUA KRIZEN, JARRETT | : | |
| CUNNARD, DYLAN KERR, HERITAGE | : | |
| VALLEY HEALTH SYSTEMS, DR. | : | **CIVIL ACTION COMPLAINT** |
| ANDREW BUHR,  and DR. MICHAEL A. | : | |
| KWIAT | : | |
| | : | |
| Defendants. | : | |

**NOW COMES** Plaintiff Robert Richards by and through undersigned counsel, and files this Complaint against all Defendants, and states as follows:

## I.    INTRODUCTION

1.    This is an action for damages arising from the unlawful detention and violation of Plaintiff's civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and related state laws. Plaintiff alleges that Defendants unlawfully detained him, subjected him to unwarranted psychiatric hospitalization, and violated his rights to due process and to be free from unreasonable seizures. Defendants jointly acted under color of state law to detain him involuntarily, without any individualized medical assessment, in violation of constitutional protections.

{1}

## II.    JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 to redress violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and of tort and governmental liability state law claims.

3.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343. The state claims are to be heard pursuant to 28 U.S.C. § 1367(a), in that the state claims are so related to the claims in this action within the original jurisdiction of this Court that they form part of the same case and controversy under Article III of the United States Constitution.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because the events giving rise to this action occurred in this district and Defendants reside, conduct business, or are located in this district.

5.      All actions, omissions, and events complained of took place in the County of Beaver, Commonwealth of Pennsylvania, and within the venue of this Court.

6.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.    PARTIES

7.      Plaintiff Robert Richards ("Richards") is a citizen of the United States currently residing in Beaver County, Pennsylvania, and was a resident of the Township of Brighton, Beaver County, Pennsylvania when these events occurred.

8.      Defendant Brighton Township ("Brighton") is a political body and corporate duly organized and existing under the law of the Commonwealth of

Pennsylvania, and pursuant to law is capable of being sued in this Court. Defendant Township is responsible for the policies, practices, and customs of its Police Department, including the selection, hiring, appointment, training, supervision, control, discipline, oversight and retention of its police officers. Defendant Township is and was the employer of the personnel named herein as individual defendants. Defendant Township is also responsible for the operation, practices and totality of conditions of its arrestees. The Defendant Township acts or fails to act through its policy-making officials, including but not limited to its Supervisors, Officers, and Police Chief of the Brighton Township Police Department, and their assigns. The acts and edicts of these policy-making officials represent the policies, practices, and customs of its police force.

9.      Defendants Chief Howard Binns, Sergeant Joshua Krizan, Officer Jarrett Cunnard and  Officer Dylan Kerr (collectively "Defendant Officers") are and/or were at all relevant times, law enforcement officers employed by the Defendant Township acting under color of state law. They are sued in their official and individual capacity.

10.      Defendant Heritage Valley Health Systems ("Defendant Heritage Valley") is a hospital and medical center duly organized and operating under the trade name of a public institution existing under the laws of the Commonwealth of Pennsylvania and pursuant to law is capable of being sued in this Court. Defendant Heritage Valley is responsible for the policies, practices, and customs of its employees, including the selection, hiring, appointment, training, supervision, control, discipline, oversight and retention of its doctors, social workers, and other employees. Defendant Heritage Valley is and was the employer of the personnel named herein as individual defendants. Defendant Heritage is also responsible for the operation, practices and totality of

conditions of its patients. Defendant Heritage Valley acts or fails to act through its policy-making officials, as well as its professional employees such as doctors, nurses, social worker and their assigns; the acts and edicts of these officials represent the policies, practices and customs of the Defendant.

11.     Defendants Dr. Andrew Buhr and Dr. Michael A. Kwiat, are and/or were at all relevant times employees of the Defendant Heritage Valley. They are sued in their official and individual capacity.

12.     All Defendants were acting at all times relevant in concert, in conjunction with and in support of each other, and on each other's behalf.

### IV.     FACTUAL ALLEGATIONS

13.     On or around October 7, 2023, Mr. Richards was residing with his former spouse, Julie Richards, at their former marital residence located at 2600 Dutch Ridge Road, Beaver, Beaver County, Pennsylvania 15009.

14.     Following an argument and resulting marital discord, Mr. Richards left the residence and went directly to the Brighton Police Department to document the incident.

15.     At the station, Mr. Richards informed Officer Jarrett Cunnard ("Cunnard") that Ms. Richards had locked him out of the residence and began damaging her personal belongings and placing them in the garage.

16.     Officer Cunnard asked if Mr. Richards had somewhere he could stay for a few days to allow the conflict to subside.

17.    Mr. Richards responded that he would be staying with a friend in Ellwood City.

18.    Upon request, Mr. Richards provided Officer Cunnard with Ms. Richards's contact information and left the police station.

19.    After Mr. Richards departed the station, Officer Cunnard contacted Ms. Richards.

20.    Ms. Richards confirmed that the incident had been only a verbal altercation and there was no physical interaction.

21.    When asked if there was additional information he should know, Ms. Richards suggested that Mr. Richards had stated he wanted to kill himself and that a firearm was located inside of his vehicle.

22.    Following this conversation, Officer Cunnard contacted Mr. Richards and requested that he return to the station.

23.    Officer Cunnard assured Mr. Richards that Ms. Richards had confirmed it was merely a verbal argument and pleaded with him to come back.

24.    After being assured by Officer Cunnard that he would not be arrested, Mr. Richards agreed to return.

25.    Upon his return, Mr. Richards asked why he had been called back. Officer Cunnard informed him that Ms. Richards had suggested he was having suicidal ideations.

26.    At no time during these interactions did Officer Cunnard provide Miranda warnings or advise Mr. Richards of his right to remain silent.

27.     Mr. Richards denied having suicidal ideations, and, notwithstanding the absence of personal observations to suggest that Mr. Richards was suffering from a mental health crisis, Officer Cunnard requested that he contact the Crisis Hotline.

28.     Mr. Richards complied and informed the representative from Crisis that he was fine and was not suffering from suicidal ideations.

29.     Although Mr. Richards repeatedly denied having suicidal ideations, Officer Cunnard claimed that he failed to accurately report the circumstances to Crisis and continued to detain him at the police station.

30.     Despite Mr. Richards's repeated denials and absence of erratic or dangerous behavior, Officer Cunnard continued to treat him as mentally disturbed and would not allow him to leave the police station.

31.     Officer Cunnard then contacted Ms. Richards again and provided her the Crisis telephone number so she could pursue an involuntary commitment of Mr. Richards.

32.     Ms. Richards retracted her claims that Mr. Richards was suffering from suicidal thoughts and refused to pursue his involuntary commitment.

33.     Officer Cunnard then requested assistance from Officer Kerr.

34.     When Officer Kerr arrived, Officer Cunnard reported that Mr. Richards had become more upset and allegedly commented, "If I wanted to kill myself, I would have done so already. I have two guns in my car."

35.     Although Mr. Richards maintained he was not suicidal and had committed no crime, Officer Cunnard formally advised him that he was not free to leave and that he was being detained.

36.     After detaining Mr. Richards, Officer Cunnard spoke with Crisis, who informed him that Ms. Richards refused to petition for involuntary commitment and that the officer would need to pursue the commitment.

37.     Notwithstanding the complete lack of evidence that Mr. Richards posed a danger to himself or others, Officer Cunnard forcefully handcuffed him and advised him that he would be transported to the Heritage Valley Medical Center located in Beaver for an involuntary commitment.

38.     The Brighton Police improperly judged Mr. Richards mentally unfit based solely on Ms. Richards's uncorroborated allegations, which she later retracted, and without personally observing him engage in any dangerous behavior.

39.     Officer Cunnard transported Mr. Richards to Heritage Valley and requested an involuntary commitment for a period of not less than 72 hours, despite there being no psychiatric emergency or immediate risk to justify detention.

40.     Dr. Buhr conducted a behavioral screening.

41.     During the screening, Dr. Buhr interviewed Mr. Richards at bedside.

42.     Mr. Richards repeatedly denied any suicidal or homicidal ideations.

43.     Although Dr. Buhr noted that Ms. Richards had initially reported that Mr. Richards was suffering from suicidal ideations, he failed to document that she later retracted this allegation when speaking with Crisis.

44.     Despite Mr. Richards's consistent and repeated denials, Dr. Buhr admitted him for psychiatric observation based on the information contained in Officer Cunnard's report that he used to justify his unsupported belief that further evaluation was necessary.

45.     After his admission and several hours later, Mr. Richards was assessed by Dr. Kwiat.

46.     During this interview, Mr. Richards explained that he had reported to the police station after an argument with his wife.

47.     He described how Ms. Richards had broken his belongings and thrown his clothes into the garage, prompting him to leave and stay with a friend. He explained that Ms. Richards subsequently contacted the police and falsely reported suicidal ideations. Mr. Richards emphasized that he only returned to the station after being promised that he would not be arrested.

48.     Although Mr. Richards consistently denied suicidal or homicidal ideations and displayed no erratic behavior, Dr. Kwiat informed him that his commitment could not be discontinued without further inpatient evaluation.

49.     Mr. Richards was involuntarily confined for approximately three days, without displaying any erratic behavior or being provided substantive medical evaluation to justify the continued detention.

50.     Drs. Buhr and Kwiat relied solely on Officer Cunnard's unverified statements and exercised no independent medical judgment.

51.     Defendant officers, with the subsequent aid of Drs. Buhr and Kwiat, caused Mr. Richards to be involuntarily committed for 72 hours based on false and unsubstantiated allegations.

52.     This seizure and commitment were premised entirely on unfounded allegations and inadequate investigation.

{8}

53.    Heritage Valley medical records contain no evidence of mental illness, defect, or dangerousness; they merely reference the police report, showing no independent assessment was made.

54.    Dr. Buhr admitted Mr. Richards without citing any observed behavior requiring restraint and the records contain no medical basis for a psychiatric hold.

55.    Dr. Kwiat maintained the unlawful commitment without citing any observed behavior requiring restraint and the records contain no medical basis for a psychiatric hold.

56.    Heritage Valley personnel failed to properly interview or assess Mr. Richards, merely echoing the police narrative.

57.    Drs. Buhr and Kwiat involuntarily committed Mr. Richards, not on an independent evaluation, but based solely on unsubstantiated police claims.

58.    Mr. Richards did not resist his unlawful arrest or detention. Defendants presented unsubstantiated allegations without evidence of criminal conduct or demonstrable mental defect and confined him for three days in a psychiatric facility.

59.    After three days, Mr. Richards was discharged without a hearing or follow-up treatment.

60.    Defendants conspired to violate Mr. Richards's constitutional rights through a coordinated effort between law enforcement and medical personnel to detain him unlawfully.

61.    Defendants acted intentionally, recklessly, wantonly, in bad faith, and/or maliciously, depriving Mr. Richards of liberty and constitutional rights with disregard for his safety and dignity.

62.    Defendants' actions were taken under color of state law and within the scope of their official duties, in coordination with private medical personnel, to effectuate Mr. Richards's unlawful detention.

63.    As a direct and proximate result of Defendants' actions, Mr. Richards suffered loss of liberty, emotional anguish, humiliation, fear, embarrassment, inconvenience, loss of personal property, economic harm, and severe psychological distress.

64.    Defendants had no legal justification or lawful basis for arresting, detaining, or involuntarily committing Mr. Richards.

## V.    CLAIMS FOR RELIEF

### COUNT I

### UNLAWFUL ARREST
### (42 U.S.C. § 1983)
### Against Defendant Officers

65.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

66.    At all times relevant hereto, the Defendants were acting under color of law.

67.    The Fourth Amendment protects against unreasonable seizures. A seizure without probable cause, reasonable suspicion, or exigent circumstances is unlawful.

68.    On October 7, 2023, Plaintiff voluntarily reported to the Brighton Township Police Department after a domestic argument, having committed no crime.

69.     Ms. Richards confirmed to Officer Cunnard that the incident was only verbal.

70.     Despite the lack of any criminal conduct and Plaintiff's repeated denials of suicidal ideations combined with the lack of erratic or dangerous behavior, Defendant Officers detained him, handcuffed him, and transported him against his will to Heritage Valley Beaver Hospital to seek an involuntary commitment of his person.

71.     No probable cause or reasonable suspicion existed to believe Plaintiff committed a crime or posed imminent danger to himself or others. In fact, Crisis declined to pursue a commitment after Ms. Richards refused to support it.

72.     Defendant Officers arrested and detained Mr. Richards without probable cause or any legal justification, in violation of his rights under the Fourth Amendment of  the United States Constitution.  There was no legal basis for his arrest as no crime was committed and he was not a threat to himself or others.

73.     Plaintiff's seizure was objectively unreasonable and constituted a violation of his Fourth Amendment rights.

74.     The actions of the Defendant Officers were willful, wanton and undertaken with reckless disregard for Mr. Richards constitutional rights.

75.     The officers acted recklessly, in bad faith, and in wanton disregard for the serious consequences their unlawful actions had on Mr. Richards' Constitutional safeguards.

76.    Plaintiff's arrest was traumatic and led to severe psychological and emotional distress.

77.    As a direct and proximate result of the conduct complained of herein, Plaintiff suffered deprivation of clearly established rights protected by the United States Constitution, including, but not limited to, the right to be free from an unlawful arrest and deprivation of his liberty without probable cause or any other legal justification.

78.    As a result of his unlawful detention and arrest, Plaintiff suffered loss of liberty, emotional distress, humiliation, embarrassment and economic harm.

## COUNT II
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983
### (Defendant Officers)

79.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

80.    At all times relevant hereto, Defendants were acting under color of law.

81.    After requesting Plaintiff to return to the police station, Defendant Officers began questioning and interrogating Mr. Richards without advising him of his Fifth Amendment rights.

82.    Defendant Officers failed to advise Mr. Richards that he had the right to remain silent or the right to an attorney, even though they were questioning him about potentially criminal conduct.

83.    At the time Officers questioned him, they lacked probable cause or reasonable suspicion to believe that Mr. Richards had committed any crime or posed

any threat to himself or others. Instead, the interrogation and seizure of his person were based on false and uncorroborated allegations and not objective facts.

84.     The Officers manipulated the statements made by Mr. Richards during his interaction with them to justify his unlawful detention and subsequent illegal commitment to Heritage Valley.

85.     As a result of the conduct complained of herein, Mr. Richards suffered deprivation of clearly established rights protected and secured by the United States Constitution and the laws of the Commonwealth of Pennsylvania, including, but not limited to, the right to be free from deprivation of liberty.

86.     The Defendant Officers' actions of interrogating him and, ultimately detaining and arresting him, were, at all times, intentional, reckless, and/or deliberately indifferent to Mr. Richards rights under the Fourth, Fifth and Fourteenth Amendment of the United States Constitution.

87.     The Defendant Officers acted at all times intentionally and recklessly and/or with gross negligence to deprive Mr. Richards of his constitutional rights in violation of 42 U.S.C. §1983.

88.     Particularly, Defendant Officers acted with gross negligence by failing to follow the procedures for lawful interrogation and questioning, which ultimately led to his unlawful arrest, all of which were directly in violation of his constitutional rights.

89.     As a direct and proximate cause of the aforementioned acts by Defendant Officers, Mr. Richards suffered damages, including emotional distress, humiliation, embarrassment and the unlawful deprivation of his liberty.

90.    Defendant Officers violated Mr. Richards Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. §1983.

## COUNT III

## DEPRIVATION OF DUE PROCESS – FOURTEENTH AMENDMENT
### (42 U.S.C. § 1983)
### All Defendants

91.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

92.    The Fourteenth Amendment prohibits deprivation of liberty without due process of law. Involuntary psychiatric commitment requires both procedural safeguards and evidence of imminent danger to self or others.

93.    Plaintiff was seized and confined for approximately 72 hours without a hearing, judicial authorization, or substantive medical justification.

94.    Drs. Buhr and Kwiat admitted and maintained Plaintiff's confinement based solely on false and uncorroborated allegations contained in Officer Cunnard's police report, ignoring Plaintiff's denials and failing to conduct meaningful assessments.

95.    Officer Cunnard knowingly and intentionally included false and misleading information in his police report to achieve his goal of having Mr. Richards unjustly committed to the psychiatric ward of Heritage Valley against his will.

96.    Heritage Valley failed to provide adequate procedural safeguards to protect Mr. Richards from being unlawfully detained in its facility against his will.

Instead, Heritage Valley permitted the continued unlawful detention of Plaintiff on false and unsupported allegations that had already been retracted.

97.    Defendants' actions deprived Plaintiff of liberty without due process, in violation of the Fourteenth Amendment.

98.    As a direct and proximate cause of the aforementioned acts by Defendant Officers, Mr. Richards suffered damages, including emotional distress, humiliation, embarrassment and the unlawful deprivation of his liberty.

## COUNT IV

### ABUSE OF PROCESS / MALICIOUS USE OF §302 COMMITMENT PROCEDURES
### (42 U.S.C. § 1983, Against Defendant Officers)

99.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

100.    At all times relevant hereto, Defendant Officers were acting under the color of law.

101.    Defendant Officers lacked probable cause or reasonable suspicion to unlawfully seize and detain Mr. Richards.  Instead, they acted on false and unsubstantiated allegations made by his former spouse and acted with an unlawful motive to detain his person and restrict his freedom without attempting to investigate and properly assess the allegations.

102.    Defendant Cunnard willfully misused the legal process by completing an application for involuntary commitment under false pretenses, relying on false and unverified claims that Mr. Richards was suffering from suicidal thoughts.

103.    Defendant Cunnard purposely and intentionally manipulated statements made by Mr. Richards and presented them out of context to the hospital staff at Heritage Valley to achieve his goal of involuntarily committing his person.

104.    Even though Ms. Richards later retracted these false allegations, and Defendant Cunnard was personally aware that she retracted these allegations, Defendant Officers continued to pursue the unlawful involuntary commitment of Mr. Richards and purposely failed to inform hospital staff of the retracted allegations.

105.    These actions demonstrate that Defendant Officers acted with malice and an intent to cause harm to Mr. Richards without justification, thereby causing him significant harm and distress.

106.    Defendant Officers abused the legal process and violated Mr. Richards Fourth, Fifth and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. 1983.

107.    As a direct and proximate cause of the aforementioned acts by Defendant Officers, Mr. Richards suffered damages, including emotional distress, humiliation, embarrassment and the unlawful deprivation of his liberty.

## COUNT V

### CONSPIRACY TO DEPRIVE CIVIL RIGHTS
### (42 U.S.C. § 1983)
### Against All Defendants

108.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

109.    Defendants agreed, explicitly or tacitly, to unlawfully detain Plaintiff without legal basis.

110.    Defendant Officers initiated the unlawful seizure, handcuffing and transporting of Plaintiff to Heritage Valley to forcefully commit him to the psychiatric ward of the hospital against his will and without lawful justification.

111.    Defendant Officers then misrepresented the statements and conditions of Mr. Richards in their pursuit of involuntarily committing his person.

112.    Defendant Officers intentionally failed to advise hospital staff that the allegations made by Ms. Richards that Mr. Richards was suffering from suicidal thoughts were retracted prior to him being transported to the hospital.

113.    Drs. Buhr and Kwiat admitted and maintained Plaintiff's confinement despite the lack of clinical evidence suggesting that he was a threat of harm to himself or others.

114.    Defendants' coordinated actions demonstrate a joint plan and overt acts in furtherance of depriving Plaintiff of his constitutional right to be free from the unlawful deprivation of his liberty.

115.    As a direct and proximate cause of the aforementioned acts by the Defendants, Mr. Richards suffered damages, including emotional distress, humiliation, embarrassment and the unlawful deprivation of his liberty.

## COUNT VI
## UNLAWFUL RESTRAINT

**(HERITAGE VALLEY, DR. KWIAT, DR. BUHR)**

116.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

117.    Upon information and belief, Heritage Valley routinely accepts individuals detained by police officers who are subject to involuntary commitment.

118.    It is the duty and obligation of Heritage Valley and its employees to properly screen and evaluate any person being brought in for an involuntary commitment.

119.    Drs. Kwiat and Buhr failed to perform a proper, independent evaluation of Mr. Richards, but instead accepted the unsubstantiated allegations made by Officer Cunnard and ignored the sound explanations of the circumstances made by Mr. Richards.

120.    As a direct and proximate result of Drs. Kwiat and Buhr's failure to perform an independent medical assessment and properly evaluate the needs of Mr. Richards, he was involuntarily committed to Heritage Valley and held against his will for a period of approximately three days.

121.    Heritage Valley, Drs. Kwiat and Buhr's, and other unknown employees of Heritage Valley failed to perform a proper independent evaluation fo Mr. Richards, but instead accepted the unsubstantiated allegations made by police officers, thereby demonstrating their joint function with state authorities.  The lack of a proper, independent medical assessment further supports the claim that Heritage Valley, Dr.

Kwiat, Dr. Buhr and other unknonw employees of Heritage Valley acted as state actors when they intentionally and unlawfully violated Mr. Richards' constitutional rights.

122.    Heritage Valley, Drs. Kwiat and Buhr's, and other unknown employees of Heritage Valley violated Mr. Richards Fourth, Fifth, and Fourteenth Amendment rights under the United States Constituion, the laws of the Commonwealth of Pennsylvania, and 42 U.S.C. §1983.  Particularly, their action of accepting police allegations without conduct a proper, independent evaluation, were reckless and devoid of any legal or medical justification.

123.    Heritage Valley, Drs. Kwiat and Buhr's, and other unknown employees of Heritage Valley role in involuntarily detaining Mr. Richards exceeded the scope of private medical care but instead involved significant governmental involvement under Pennsylvania law.

124.    As a direct and proximate result of the actions undertaken by Heritage Valley, Drs. Kwiat and Buhr's, and other unknown employees of Heritage Valley, Mr. Richards suffered injuries and damages, including emotional distress, the unlawful deprivation of his liberty, and prolonged psychological trauma.

## COUNT VII

### MUNICIPAL LIABILITY – MONELL
### (42 U.S.C. § 1983)
### Defendant Brighton Township

125.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

126.    Defendant Brighton Township is a municipal entity organized under the laws of the Commonwealth of Pennsylvania.

127.    Defendant Brighton Township is responsible for the policies, practices, and customs of its police department.

128.    Defendant Brighton Township, through its police department had a duty to adequately train and supervise its police officers, including the Defendant Officers named herein, to ensure that they respected and protected the constitutional rights of individuals, including the right to be free from unlawful arrest and detention, and to treat people fairly and indiscriminately.

129.    Defendant Brighton Township knew or should have known that its failure to train and supervise its officers in the proper handling of mental health-related situations, the unlawful use of emergency psychiatric holds would likely result in violations of an individual's constitutional rights and freedoms.

130.    Municipal entities may be held liable where unconstitutional acts result from policies, customs, or deliberate indifference in training and supervision.

131.    Brighton Township failed to adequately train or supervise its officers regarding:

    i.     Properly responding and investigating a citizen's complaints;

    ii.    Respect for individuals' rights to be free from unreasonable searches and seizures;

    iii.   Ensuring lawful and justified arrest procedures that comport with the mandates of the Fourth, Fifth and Fourteenth Amendment;

    iv.   Ensuring officers know and understand the lawful bases for involuntary commitment,

     v.    Ensuring the officers knowledge of the requirements of the Pennsylvania Mental Health Procedures Act (MHPA),

     vi.    and constitutional limits on seizure and detention.

132.    Defendant Brighton's failure to properly train its officers resulted in Defendant Officers detaining Plaintiff without probable cause or evidence of imminent danger.

133.    Defendant Brighton's failure to train or supervise its officers' amounts to deliberate indifference to the rights of individuals, including Mr. Roberts, and directly caused his unlawful seizure, detention, and deprivation of liberty without due process.

134.    Defendant Brighton's actions and/or inactions permitted its officers to engage in conduct that violated Mr. Richards clearly established constitutional and statutory rights and is unlawful in light of clearly established law.

135.    As a direct and proximate result of Defendant Brighton's actions or failure to act that allowed Mr. Richards constitutional and statutory rights to be violated, Mr. Richards has suffered and continues to suffer economic and non-economic damages.

136.    Defendant Brighton is liable under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution through the application of 42 U.S.C. §1983.

## COUNT VIII
### NEGLIGENT AND RECKLESS HIRING/RETENTION/SUPERVISION
### Defendant Brighton Township

137.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though full set forth herein.

138.    Defendant Brighton Township is a municipal entity organized under the laws of the Commonwealth of Pennsylvania.

139.    Defendant Brighton Township is responsible for the policies, practices, and customs of its police department.

140.    Defendant Brighton had a duty to exercise reasonable care in the hiring, retention, and supervision of its police officers, including Defendant Officers, to ensure that they were fit for their positions and would not pose a risk of harm to the public

141.    Defendant Brighton negligently and recklessly breached this duty by retaining Defendant Officers, despite evidence of incompetence, misconduct, or a demonstrated propensity for violating individuals' constitutional rights.

142.    As a result of Defendant Brighton's negligent and reckless hiring, retention and supervision practices, Defendant Officers were placed in a position where they could, and did, violate Mr. Richards constitutional rights through unlawful arrest, involuntary detention, and discriminatory treatment.

143.    Defendant Brighton's acts and omissions were the proximate cause of Mr. Richards injuries, including emotional distress, humiliation and deprivation of liberty.

144.    As a direct and proximate result of Defendant Brighton's negligent and reckless hiring, retention and supervision of its police officers, Mr. Collins suffered damages as described herein.

**COUNT IX**

**RESPONDEAT SUPERIOR/OSTENSIBLE AGENCY**

### Defendant Heritage Valley

145.    All preceding paragraphs are incorporated herein by reference as though set forth in full.

146.    At all times relevant hereto, Defendant Heritage Valley employed, or otherwise held out as employees, Dr. Kwiat, Dr. Buhr and other nurses and other medical professionals that treated Mr. Richards.

147.    At all relevant times hereto, Dr. Kwiat, Dr. Buhr and other nurses and other medical professionals were acting within their scope of their employment and agency with Heritage Valley.

148.    Defendant Heritage Valley is responsible for creating the policies, practices, procedures and customs of hospital operations.

149.    Defendant Heritage Valley had a duty to adequately train and supervise its doctors and other medical professional employees to ensure that they respected and protected the constitutional rights of individuals, including the right to be free from unlawful involuntary commitment to the hospital, and to treat people fairly and indiscriminately.

150.    Heritage Valley maintained policies, procedures or customs that allowed staff to admit individuals under §302 of the MHPA without conducting a proper, independent psychological assessment, relying solely on allegations contained in law enforcement reports.

151.    Defendant Heritage Valley's deliberate indifference to the rights of Mr. Richards caused Mr. Richards to be unlawfully and involuntarily committed in violation of his Constitutional rights. caused the violation of Plaintiff's constitutional rights.

152.    As a result, Plaintiff sustained damages including loss of liberty, emotional trauma, and financial harm.

## COUNT X

### FALSE IMPRISONMENT
### Against All Defendants

153.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

154.    Under Pennsylvania law, false imprisonment is the unlawful detention of a person without consent or legal justification.

155.    Plaintiff did not consent to confinement and repeatedly denied suicidal ideations.

156.    Defendant Officers restrained Plaintiff with handcuffs and transported him against his will and without any lawful justification.

157.    Drs. Buhr and Kwiat unlawfully maintained Plaintiff's confinement without lawful justification.

158.    Plaintiff was confined for three days at Heritage Valley without legal authority.

159.    This unlawful confinement constitutes false imprisonment, causing Plaintiff damages.

## COUNT XI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Against All Defendants**

160.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

161.    Defendants engaged in extreme and outrageous conduct by seizing and confining Plaintiff in a psychiatric facility without lawful justification.

162.    Defendant Officers misused their authority by detaining and handcuffing Plaintiff despite no evidence of danger or criminal conduct.

163.    Drs. Buhr and Kwiat intentionally disregarded Plaintiff's consistent denials and admitted him based solely on unsupported police claims.

164.    Defendants acted intentionally, recklessly, and with disregard for Plaintiff's rights and dignity.

165.    As a direct result, Plaintiff suffered severe emotional distress, humiliation, and psychological harm.

## COUNT XII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**Against All Defendants**

166.    Plaintiff incorporates by reference all preceding paragraphs as though set forth in full.

167.    Pennsylvania law recognizes a cause of action for negligent infliction of emotional distress where:

a.    the plaintiff was subjected to a special duty of care,

b.    the plaintiff was placed in a zone of danger of physical impact, or

c.    the defendant's conduct foreseeably caused severe emotional distress.

168.    Defendants owed Plaintiff duties of care:

a.    Defendant Officers, as law enforcement, owed a duty not to unlawfully detain or physically restrain him without lawful justification;

b.    Defendant Heritage Valley, Dr. Buhr, and Dr. Kwiat owed a duty of professional care as medical providers evaluating Plaintiff for psychiatric commitment.

169.    Defendants breached these duties by:

a.    handcuffing and detaining Plaintiff despite lack of probable cause (¶¶34–37);

b.    transporting him against his will and confining him for 72 hours (¶¶36, 38, 48);

c.    relying solely on unverified allegations instead of medical judgment (¶¶42–47, 49–56).

170.    Defendants' conduct foreseeably caused Plaintiff severe emotional distress, including humiliation, fear, anxiety, and psychological harm (¶62).

171.    Plaintiff was in the zone of danger, being handcuffed, forcibly detained, and involuntarily confined in a psychiatric ward, where he reasonably feared further harm.

172.    Plaintiff also stood in a special relationship with Heritage Valley and its doctors, who owed him a duty of professional medical care, which they negligently breached.

173.    As a direct and proximate result, Plaintiff suffered severe emotional distress, mental anguish, humiliation, and associated damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor and against all Defendants, and seeks:

a. Compensatory damages in excess of $75,000;

b. Punitive damages against the individual Defendants;

c. Attorney's fees and costs under 42 U.S.C. § 1988;

d. Pre- and post-judgment interest; and

e. Such other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

/s/ Bradley G. Olson, Jr.
Bradley G. Olson, Jr.
PA Supreme Court ID No. 204606
Attorney for the Defendants
The Law Offices of Bradley G. Olson, Jr.
109 N. Mercer Street
New Castle, PA 16101
P: 724.656.6633 / 330.318.3453
F: 724.656.0063
E: brad@lobo-legal.com

## **VERIFICATION**

I, _ROBERT P RICHARDS_, hereby verify that the

statements contained in the within _____

____Complaint_____.  are true and

correct to the best of my information, knowledge and belief.  I

understand that false statements herein are made subject

to the penalties, relating to unsworn falsification to authorities.


Date: _10·7·25_          _Robert P Richards_____